UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

JAMES PATOCK,                           )
                                        )
              Plaintiff,                )
                                        )
v.                                      )         Civil Action No.: 1:11-cv-974
                                        )
FOX NEWS TELEVISION CHANNEL,            )
*et al.*,                               )
                                        )
              Defendants.               )

## MEMORANDUM OPINION

This matter comes before the Court on the Defendant Department of the Interior's

("DOI") Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) (Dkt. No. 121).

Plaintiff alleges two grounds for relief against DOI. First, he requests relief under the Federal

Tort Claims Act ("FTCA") for defamation and conversion committed by the DOI's component

the United States Park Police ("Park Police"). Second, he alleges DOI violated his constitutional

rights by confiscating his dog and firearms in the course of his arrest.

DOI requests dismissal under 12(b)(1). DOI asserts multiple bases for dismissal of

Plaintiff's tort claims. DOI maintains that Plaintiff failed to properly and timely present his tort

claims to DOI before bringing suit in federal court. In addition, DOI contends that even if

Patock's tort claims were proper and timely, they would still fail on the merits. Under DOI's

theory, defamation claims are barred by the FTCA and Plaintiff cannot state a claim for

conversion because no unlawful taking occurred. DOI contends Patock's constitutional claims

also fail. No *Bivens* action lies against a federal agency such as DOI. Additionally, DOI is not the

proper defendant to effectuate the return of Patock's dog and this Court is not the proper venue

for Patock to request return of property confiscated pursuant to his arrest in Washington, D.C.

1

The Court grants DOI's Motion to Dismiss and dismisses Plaintiff's claims against DOI with prejudice.

## BACKGROUND

On November 3, 2010, a Park Police officer encountered a pickup truck with an attached trailer occupying two handicapped spaces in front of the National Air and Space Museum in Washington, D.C. While looking for a handicap parking pass, the officer became suspicious that the vehicle contained a bomb. The Park Police determined the vehicle did not contain a bomb and located its owner, James Patock. Officers recovered three firearms and a rifle barrel from the vehicle. Patock was arrested for attempting to carry a pistol without a license in violation of D.C. law.

Police also found a German Shepard in Patock's trailer. Because the dog would have been left unattended, Police contacted D.C. Animal Control to take custody of the dog. Gov't Ex. 2 ¶¶ 3-6; *see* D.C. Code § 22-1012. Animal Control took custody of the German Shepard and transported it to the D.C. Animal Control Facility, run by the Washington Humane Society. *Id.*; Gov't Ex. 3 ¶ 4 & Ex. A. The Humane Society subsequently transferred ownership of the dog to Virginia German Shepard Rescue, Inc. ("VGSRI"). Plaintiff takes issue with the aforementioned chain of custody; he now maintains the Park Police retained custody of the dog and no transfer to the Humane Society occurred. Pl. Opp'n at 4. He does not, however, contest that his dog was transferred to VGSRI in November 2010. *Id.* A summons was issued and given to the U.S. Marshals for service on VGSRI on February 8, 2012. To date no return has been filed and VGSRI has not appeared in this action. Counsel for DOI contacted counsel for VGSRI to determine the whereabouts of the dog. Def. Reply at 8. Counsel for VGSRI explained that a

family adopted the dog and VGSRI cannot disclose the name of the adopting family. *Id.* VGSRI did explain the situation to the family, but they refused to return the dog to Mr. Patock. *Id.*

On December 20, 2010, Plaintiff pleaded guilty to Attempted Carrying of a Pistol Without a License and Possession of an Unregistered Firearm, in violation of D.C. Code §§ 22-4504(a), 7-2502.01. On January 14, 2011, Plaintiff received a 180-day suspended sentence and one-year probation.

On June 6, 2011, Patock submitted a letter to DOI informing the agency he was "filing a claim against [DOI] and its subsidiary the United States Park Police for compensation for . . . illegal, brutal, and unconstitutional treatment . . . ." Gov't Ex. 5 ¶ 3. Included in Plaintiff's list of grievances were allegations that DOI made false statement about him and illegally took his dog. His letter did not, however, list a specific amount of damages requested. DOI responded by informing him that he must request a specific amount for consideration under the Federal Tort Claims Act ("FTCA"). Patock did not respond and does not dispute that his letter to DOI failed to request a sum certain. *See* Pl. Opp'n. at 5 (admitting his letter to DOI did not request a sum certain because it "would be decided later" given the "complexities of the issues involved").

Plaintiff filed suit against DOI and thirteen other defendants in this Court on September 12, 2011. Plaintiff filed an amended complaint on October 11, 2011. Plaintiff's claims against DOI can be divided into two categories. First, under the FTCA, Plaintiff alleges the Park Police defamed him and unlawfully converted his German Shepard. Second, Patock asserts his constitutional rights have been violated by DOI's refusal to return his dog and the weapons seized during his arrest. Patock's prayer for relief requests return of his dog, but not his firearms, and $20 million in damages. DOI requests dismissal with prejudice for lack of subject matter jurisdiction.

3

## ANALYSIS

Federal Rule of Civil Procedure 12(b)(1) allows a party to move for dismissal of a claim based upon a court's lack of subject matter jurisdiction. The Court must assume all the facts alleged in the complaint are true for purposes of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1). *Burke v. AT&T Tech. Servs. Co.*, 55 F. Supp. 2d 432, 436 (E.D. Va. 1999).

### I.   The Court Lacks Subject Matter Jurisdiction Over Plaintiff's Defamation and Conversion Claims

Courts generally do not have subject matter jurisdiction over claims against the federal government and its agencies due to the doctrine of sovereign immunity. *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). As such, the Plaintiff must establish that the claims asserted are authorized by a statutory waiver of sovereign immunity, such as the Federal Tort Claims Act ("FTCA"). *Medina v. United States*, 259 F.3d 220, 223 (4th Cir. 2001); 28 U.S.C. § 1346(b) (authorizing claims "for money damages . . . for injury or loss of property . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment"). The FTCA is a limited waiver of immunity, imposing tort liability on the United States only "in the same manner and to the same extent as a private individual under like circumstances." *Anderson v. United States*, ---F.3d ---, 2011 WL 6358000, at *3 (4th Cir. Dec. 20, 2011) (quoting 28 U.S.C. § 2674). Because the FTCA constitutes an exception to the general rule of sovereign immunity, "the circumstances of its waiver must be scrupulously observed and not expanded by the courts" and plaintiffs "must file an FTCA action in careful compliance with its terms." *Kokotis v. U.S. Postal Serv.*, 223 F.3d 275, 278 (4th Cir. 2000).

"A key jurisdictional prerequisite to filing suit under the FTCA involves the presentation of an administrative claim to the government within two years of the incident." *Id.* (citing 28 U.S.C. § 2401(b) (a tort claim "shall be forever barred unless it is presented in writing to the

4

appropriate Federal agency within two years after such claim accrues . . . .")). "The FTCA's implementing regulations consider a claim to be properly presented when the government receives a completed SF 95 (or other written notification of an incident), *and* 'a claim for money damages *in a sum certain* . . . .'" *Id.* (quoting 28 C.F.R. § 14.2(a)) (emphasis original). Requesting a sum certain is "a necessary element of any FTCA administrative claim. Failure to request a sum certain within the statute of limitations deprives a district court of jurisdiction over any subsequently filed FTCA suit." *Id.*

The Court lacks subject matter jurisdiction with respect to Plaintiff's tort claims for defamation and conversion, which must be brought under the FTCA. Plaintiff submitted a letter to the DOI alleging, *inter alia*, that the Park Police made false statements about him and illegally converted his dog. The letter did not include a request for a specific amount of damages; rather, it requested compensation in amount "to be determined later." Dkt. No. 62, ex. 2. Despite a letter directing Patock to remedy this deficiency, to date, he has not done so. Patock does nothing to dispute this shortcoming. He argues he could not allege a sum certain because "the complexities of the issues involved which made it impossible at that time to effectively state a claim in some exact monetary amount." Patock Opp'n at 5. *But see* Compl. at 11 (requesting $20 million in his prayer for relief in this suit). The Fourth Circuit has found justifications of this type unavailing. *See Kokotis*, 223 F.3d at 279-80 (rejecting Plaintiff's claim that she could not submit a sum certain request for damages because treatment of her physical injuries was incomplete and the full extent of her injuries were unknown); *Ahmed v. United States*, 30 F.3d 514, 517-18 (4th Cir. 1994) (rejecting assertion that because one claimant's medical condition was uncertain at the time, it was impossible to place a certain value on Plaintiffs' claim. "[Plaintiffs] need only have presented some specific valuation of their personal injury claims, and their failure to do so means

5

that they did not present the claim and consequently did not exhaust their administrative remedies."). Like the plaintiffs in *Kokotis* and *Ahmed*, Patock "cannot escape the FTCA's unwavering requirement of submission of a sum certain within two years of the incident." *Kokotis*, 223 F.3d at 279. Accordingly, without a properly presented administrative claim, the Court lacks subject matter jurisdiction over Patock's tort claims. *See Kokotis*, 223 F.3d at 278.

Should Mr. Patock properly present his FTCA claim to DOI, it would still be premature for this Court to exercise jurisdiction. The FTCA prevents claimants from filing suit in federal court until their administrative claim has been "finally denied by the agency" or the agency fails to "make final disposition of a claim within six months after it is filed . . . ." 28 U.S.C § 2675(a).

The procedural maladies which prohibit this Court's exercise of jurisdiction are two-fold. First, Patock must properly present his claim to DOI by including a request for damages in sum certain. Second, he must either wait for six months or for DOI's final denial of his claim. Only then could this Court exercise subject matter jurisdiction over Plaintiff's tort claims.

If Plaintiff remedies his procedural defects by presenting a proper claim to DOI and files a timely suit before this Court, his FTCA claims would still fail on their merits.[1] The FTCA explicitly declines to waive sovereign immunity for defamation claims. *See* 28 U.S.C. § 2690(h) (claims "arising out of . . . libel [or] slander" are not permitted under the FTCA); *Popovic v. United States*, 175 F.3d 1015, 1999 WL 228243, at *5 (4th Cir. 1999) ("Defamation is not actionable under the FTCA").

Plaintiff's conversion claim is likewise without merit. Under D.C. law, the tort of conversion "involves an unlawful exercise of ownership, dominion, and control over the personalty of another in denial or repudiation of his right to such property." *Baltimore v. District*

---

[1] DOI's Motion to Dismiss is pleaded solely under 12(b)(1). The Court has already decided it lacks jurisdiction to adjudicate Plaintiff's FTCA claims. Nonetheless, in the interest of completeness and in response to the Parties' briefing, the Court proceeds to assess Plaintiff's claims on the merits.

*of Columbia*, 10 A.3d 1141, 1155 (D.C. 2011) (internal citations omitted). Plaintiff's threadbare allegations of DOI's unlawful conduct fail to state a plausible claim for conversion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) ("[f]actual allegations must be enough to raise a right to relief above the speculative level"). The Court is cognizant of the need to construe a *pro se* complaint "liberally," but liberal construction does not require the Court to undertake a "complete rewriting" of the Plaintiff's theory of harm. *Laber v. Harvey*, 438 F.3d 404, 413 n.3 (4th Cir. 2006).

In the Amended Complaint, Patock alleges the United States Park Police, District of Columbia Department of Health and its agent the Humane Society,[2] and VGRSI were "complicit in stealing my dog . . . and transferring her to Virginia . . . where she was put up for adoption." Am. Compl. at 10. Though the Amended Complaint itself tends to indicate the dog was transferred from the Park Police to the Humane Society and, in turn, to VGSRI, in a later pleading the Plaintiff also asserts the dog was transferred directly from the Park Police to VGSRI. Pl. Opp'n at 2-4. This theory of conversion via direct transfer, expressed for the first time within Plaintiff's Opposition to DOI's Motion to Dismiss, runs counter to the allegations in the Complaint and is contradicted within Plaintiff's own briefing. *Compare* Am. Compl. at 10 (accusing the Department of Health of being complicit in the theft of his dog), Pl. Opp'n at 2 (alleging the Department of Health's refusal to return his dog to the Park Police "is also a violation of D.C. Code"), Pl. Motion for Preliminary Injunction ("The dog was illegally confiscated from my home . . . and subsequently transferred through one or more links, possibly

---

[2] Because the Humane Society acted as the District of Columbia Department of Health's agent, the Court refers to the two entities interchangeably in the paragraphs that follow.

including the District of Columbia Department of Health, to [VGSRI]."), *and* Pl. Mot. for Summary Judgment (same), *with* Pl. Opp'n at 3 (stating the dog was actually in control of the United States at the time of its transfer to VGSRI). It also defies logic. It is unclear to the Court how the D.C. Department of Health could be complicit in "stealing" Plaintiff's dog if it never had occasion to possess the dog. Am. Compl. at 10. Despite Plaintiff's attempts to assert a novel theory of liability in his most recent pleading, the Court will look to the Amended Complaint in assessing the merits of Patock's claim. The Court thus finds it implicit in the Amended Complaint that the Department of Health possessed Plaintiff's dog via a chain of custody whereby the Park Police transferred the dog to the Humane Society and the Humane Society transferred the dog to VGSRI. Under this factual scenario Patock does not state a claim for conversion sufficient to overcome 12(b)(6).

D.C. Law provides "[w]hen any person arrested is, at the time of such arrest, in charge of any animal . . . any agent of [the Washington Humane Society] may take charge of such animal . . . and deposit the same in a place of safe custody . . . ." D.C. Code § 22-1012(a). Far from unlawful conversion, DOI's transfer of the German Shepard to the Humane Society was expressly permissible under D.C. law. Additionally, and contrary to Patock's assertion, following transfer from DOI to the Humane Society, no provision required the Humane Society to maintain custody of his dog until his release from incarceration. In fact, D.C. Code further provides "[t]he Mayor shall deem abandoned any animal impounded and not redeemed by its owner within 7 days of impoundment if such animal is wearing identification . . . . An animal deemed abandoned

shall become the property of the District of Columbia and may be adopted or disposed of in a humane manner." D.C. Code § 8-1805(f).[3]

Were the Court to go further still and convert this motion to one for summary judgment, there is no evidence before the Court that supports Plaintiff's theory of direct transfer or conversion by any means. Despite the Court's grant of early and expedited discovery, Patock's theory of conversion remains unsupported by record evidence. In contrast, DOI has produced numerous documents and affidavits to support its contention that it followed D.C. law and legally transferred Patock's dog to the Humane Society. *See, e.g.*, Holmberg Decl. ¶¶ 3-6; Pettett Decl. ¶¶ 3-8; *id.*, ex. A (D.C. Department of Health Official Notification of Animal Control Violations form, indicating the German Shepard was transferred from the Park Police to the Humane Society Animal Control Facility on November 3, 2010); Def. Reply at 5 n.5 (noting "[c]ounsel for VGSRI represented to the undersigned [Assistant United States Attorney] that the organization adopted the dog from the Washington Humane Society."). The evidence before the Court uniformly indicates DOI did not take part in an unlawful conversion. DOI's legal transfer of the dog to the Humane Society would entitle the agency to summary judgment.

The Court concludes it is without subject matter jurisdiction to hear Patock's FTCA claims. Further, should the Court obtain jurisdiction, the facts and evidence before the Court indicate Plaintiff's claims would fail on the merits.

---

[3] This provision also requires "[u]pon impounding of an animal, *the Mayor* shall make a prompt and reasonable attempt to locate and *notify* the owner of the impounded animal . . . .". D.C. Code § 8-1805(b) (emphasis added). The D.C. Department of Health provided a Notice of Impoundment to the Park Police, but not the Plaintiff. The Park Police has no record of passing along said Notice of Impoundment to the Plaintiff. In the Court's view, this shortcoming was not DOI's but the District of Columbia's. The statute's terms do not impose any duty of notification on DOI. Rather, it is the Mayor who must make a prompt and reasonable effort to notify the owner. Thus, if any possibility of legal recourse remains, it is against the District of Columbia.

## II.    The Court Lacks Jurisdiction to Hear Plaintiff's Constitutional Claims Against DOI

A *Bivens* action does not lie "against either agencies or officials in their official capacity." *Doe v. Chao*, 306 F.3d 170, 184 (4th Cir. 2002); *see also FDIC v. Meyer*, 510 U.S. 471, 484-86 (1994) (holding that that a *Bivens* action cannot lie against a federal agency itself); *Randall v. United States*, 95 F.3d 339, 345 (4th Cir. 1996) ("Any remedy under *Bivens* is against federal officials individually, not the federal government."). Plaintiff's Amended Complaint lists the United States Department of Interior and its subsidiary United States Park Police as defendants in this suit.[4] Patock refers to constitutional violations at the hands of United States Park Police, who "st[ole]" his dog and confiscated his legal weapons. Am. Compl. at 5, 10. Without reference to or an attempt to sue any employee of DOI individually, Plaintiff's claims against DOI fail under *Bivens* and cannot support the award of monetary damages. Consequently, the Court finds it is without jurisdiction to hear Plaintiff's request for monetary damages concerning constitutional violations committed by DOI as an agency within the federal government.

To the extent Plaintiff requests non-monetary relief for alleged constitutional violations, such a demand may generally be considered by the court. *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 400 (1971) (Harlan, J., concurring) (observing the "presumed availability of federal equitable relief, if a proper showing can be made in terms of the ordinary principals governing equitable remedies."); *Singletary v. Fallen*, No. 11-543, 2012 WL 368375, at *3 (D.S.C. Jan. 17, 2012) *adopted by* 2012 WL 368364 ("It has long been

---

[4] The Amended Complaint's caption lists "Officer Donald" and "Officer Quadrello" below the Park Police. There is no indication, however, that the Plaintiff intended to sue these officers. They are not mentioned in the body of the Amended Complaint, nor have they been mentioned at oral argument or in any of Plaintiff's briefs. Therefore, even construing the Amended Complaint liberally due to Mr. Patock's *pro se* status, the Court finds Patock intended to sue DOI as an agency, not any individual employee.

recognized that federal courts have authority to grant equitable relief to restrain constitutional violations or *ultra vires* conduct."). In this circumstance, however, Plaintiff's request for the return of his German Shepard is not redressable by DOI and thus not an appropriate use of the Court's equitable authority. "It must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressable by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 38, 43 (1976); *United States v. Rodriguez*, No. 1:06cr4, 2009 WL 3698408, at *1 (W.D.N.C. Nov. 2, 2009) ("Courts have recognized that a motion for return of property is proper only if the property is in the possession of the United States."). The Court allowed Mr. Patock to commence discovery early and on an expedited basis to determine if DOI had possession of or knew the whereabouts of his dog. DOI produced affidavits indicating that it has no reason to believe any of its employees have had custody or control of the dog since the day of Patock's arrest in November 2010. Patock contests the exact time DOI relinquished the dog and to whom the dog was released, but does not controvert the fact that Patock's German Shepard left DOI's control more than a year ago, in November 2010. *See* Pl. Reply at 4 (stating the dog was transferred to VGRSI in late November 2010). More than a year removed from controlling Mr. Patock's dog, DOI cannot effectuate the relief sought by Mr. Patock. Simply put, this Court cannot order DOI to return something it does not possess.

Finally, to the extent Mr. Patock requests that the Court exercise its equitable authority to order the return of his firearms, this Court is not the proper venue for such a request.[5] Patock's firearms were confiscated in the course of his arrest in the District of Columbia. Pursuant to Fed.

---

[5] Although Mr. Patock does not expressly seek the return of his firearms within his request for relief, Am. Compl. at 11, the Court assumes their return is requested based upon the additional language of the Amended Complaint and other motions before the Court. *See e.g.*, Dkt. No. 22, Mot. For Subpoena and/or Preliminary Injunction for the Return of Personal Property/Evidence.

R. Crim. P. 41(g), a motion for the return of property that has been unlawfully seized in the course of a criminal action "must be filed in the district where the property was seized." *See also* D.C. Super. Ct. R. Crim. P. 41(g). Patock was arrested in Washington, D.C. and his criminal case proceeded therein. Therefore, such a request for the return of property must be filed in Washington, D.C., and this Court lacks jurisdiction to adjudicate a claim for the return of property.

Consequently, the Court concludes it lacks subject matter jurisdiction to adjudicate Patock's constitutional demands against DOI.

### CONCLUSION

For the foregoing reasons, DOI's Motion to Dismiss (Dkt. No. 141) is hereby granted. Plaintiff's claims against DOI are dismissed with prejudice.

An appropriate order shall issue.

March 1, 2012
Alexandria, Virginia

/s/
Liam O'Grady
United States District Judge